[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12312
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-02043-SLB


EDDIE WYATT MCLAIN,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 20, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Eddie McLain appeals the district court's affirmance of the denial by the Social Security Administration ("SSA") of his application for disability insurance benefits ("DIB") for a period of disability.  On appeal, McLain argues that: (1) the Administrative Law Judge ("ALJ") erred in applying the pain standard to assess McLain's complaints of disabling pain from post-herpetic neuralgia and trigeminal neuralgia and in finding that his pain allegations were only partially credible; (2) the ALJ misevaluated the opinions of two treating physicians; and (3) the district court erred by failing to consider new evidence.  After careful review, we affirm.

We review an ALJ's decision to determine if substantial evidence supports it and if the ALJ applied proper legal standards.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is more than a scintilla, and is the relevant evidence a reasonable person would accept as adequate to support a conclusion.  Id.  We may not reweigh the evidence or decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence even though the evidence preponderates against it.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Further, if an ALJ misapplies the regulations, his decision will stand so long as the error was harmless.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).  We review de novo a district court's decision about the necessity of a remand to the Commissioner based on new evidence.  Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001).  Issues not

properly raised in the district court are generally deemed to have been waived. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

First, we are unpersuaded by McLain's claim that the ALJ erred in assessing his level of pain. To be eligible for DIB, a claimant must be under a disability. 42 U.S.C. § 423(a)(1)(E). Relevant here, a claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. Id. § 423(d)(1)(A). To make a disability determination, the SSA uses a five-step sequential evaluation. 20 C.F.R. § 404.1520(a)(4). This process analyzes whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically determinable impairment; (3) has an impairment, or combination thereof, that meets or equals a "listing," and meets the duration requirement; (4) can perform his past relevant work, in light of his residual functional capacity ("RFC"); and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. Id. A claimant eligible for DIB must demonstrate disability on or before the last date for which he was insured. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). If a claimant becomes disabled after losing insured

3

status, his DIB claim will be denied despite a disability.  Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979).[1]

To evaluate attempts to establish disability through testimony about pain and subjective symptoms, a three-part pain standard is applied.  This standard requires (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) evidence that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  A reversal of the ALJ's decision is warranted if the ALJ's decision contains no evidence of the proper application of the three-part standard.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  However, the ALJ only needs to make it apparent that he was mindful of the pain standard when coming to his decision.  Wilson, 284 F.3d at 1225-26.

Once a claimant establishes an underlying medical condition, his disability determination must be made based on evidence about the intensity, persistence and functionally limiting effects of pain or other symptoms, along with any medical signs and laboratory findings.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Wilson, 284 F.3d at 1225.  The ALJ is not required

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

to specifically refer to every piece of evidence to explain his credibility finding, so long as the decision shows consideration of the claimant's condition as a whole. Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014).

We have previously determined that an ALJ properly discredited a claimant's pain testimony where the pain had not required routine or consistent treatment and the claimant often went for months or years between complaining of this pain to his physicians. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Further, in considering a claimant's subjective pain for the RFC assessment, we have approved of an ALJ's observation that the claimant's medical history contained notes of embellished and magnified pain behaviors, as well as drug-seeking manipulative tendencies. See Moore, 405 F.3d at 1213. However, in Henry v. Comm'r of Soc. Sec., 802 F.3d 21264, 1268-70 (11th Cir. 2015), we concluded that the ALJ erred when he concluded that the claimant's allegations of pain were not entirely credible. There, a significant gap existed between the claimant's treatments, which the ALJ concluded was evidence that the claimant's condition had improved. Id. We held that the ALJ failed to develop the record to address whether the claimant's argument that the gap in treatment was because of financial difficulties, not because of his condition improving. Id.

Here, the ALJ did not err in assessing McLain's pain. For starters, the ALJ cited the pain standard and gave articulated reasons for his decision, indicating that

he was aware of the standard when reaching his decision. See Wilson, 284 F.3d at 1225-26. It is also important that the ALJ was tasked only with determining whether McLain was disabled between the onset date in February 2009 and his date of last insured of December 31, 2010. See Moore, 405 F.3d at 1211; Demandre, 591 F.2d at 1090. As a result, the ALJ did not err by failing to address evidence that discussed McLain's condition outside the timeframe that he would otherwise qualify for benefits. Indeed, McLain does not argue that any medical records dated after December 2010 relate back to the relevant timeframe.

As for the ALJ's conclusion that McLain's statements about the intensity, persistence, and limiting effects of his symptoms were only partially credible, substantial evidence supports it. The ALJ began by noting that McLain had the severe impairment of post-herpetic and trigeminal neuralgia. The ALJ then evaluated McLain's subjective testimony concerning his pain and limitations, and found that they were not fully credible for the period when McLain met the insurance requirements. In reaching this conclusion, the ALJ provided a specific reason -- that McLain's pain was intermittent during the relevant period. The ALJ noted that McLain's pain was under control and recovering following his initial bout with shingles. The ALJ also observed that the notes of two physicians McLain had visited indicated that, thereafter, his pain fluctuated between stable and intense for most of the rest of the relevant period from May 2009 onwards.

6

These notes revealed that McLain had obtained some relief from a botox injection and nerve blocks. The ALJ added that the medical imaging during the relevant timeframe showed no major abnormalities that would cause such pain.

On this record, there was substantial evidence for the ALJ to conclude that McLain's pain was not continually present to a severe and disabling degree during the relevant timeframe, and thus, that McLain's statements about his pain were not fully credible and did not match with the objective medical evidence. See Dyer, 395 F.3d at 1211; Wilson, 284 F.3d at 1225. This conclusion is further supported by indications in the record that McLain's symptoms were exacerbated by his failure, at times, to follow his medication protocol correctly, and by the opinion of a physician (albeit in a dermatology setting) that McLain's description of his symptoms did not match with his objective symptoms. See Moore, 405 F.3d at 1213. In short, substantial evidence supports the ALJ's conclusion under the pain standard that McLain did not demonstrate that objective medical evidence confirmed the severity of the alleged pain arising from his condition during the timeframe from February 2009 to December 2010.

As for McLain's reliance on Henry, it is inapposite. In Henry, the ALJ failed to consider whether the claimant had not sought treatment for a period of time due to financial difficulties, rather than due to an improvement in his condition. 802 F.3d at 1268-70. Here, however, McLain has not argued that any

gaps in his treatment were caused by financial difficulties or other good cause. Instead, the medical evidence indicates any gaps in the ALJ's consideration of McLain's medical records were caused by fluctuations in his pain level.

Next, we find no merit to McLain's claim that the ALJ improperly evaluated the opinions of two of his treating physicians by failing to address them and assign them controlling weight. For a statement to be characterized as a "medical opinion," it must be from a physician, psychologist, or other acceptable source and "reflect judgments about the nature and severity of [the claimant's] impairments(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). A doctor's opinion on a dispositive issue reserved to the Commissioner, such as whether the claimant is disabled or unable to work, is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source, but the ALJ should still consider the opinion. Id. § 404.1527(d).

The ALJ must state with particularity the weight given to different medical opinions, and the reasons therefor. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011); see also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible

error."). Testimony or an opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. Lewis, 125 F.3d at 1440. We have found "good cause" to exist where: (1) the opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Id.; see also Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (stating that an ALJ "may reject any medical opinion if the evidence supports a contrary finding"). The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. See 20 C.F.R. § 404.1527(e).

Here, McLain argues that the ALJ failed to discuss with particularity some of his medical record, but even if that were true, the error would be harmless. As for McLain's reliance on Dr. William Adams's letter opining that McLain's symptoms of severe pain and sleep problems constituted disabling pain, Dr. Adams only offers a conclusory opinion that McLain's symptoms were disabling, which is a determination reserved to the Administration and not part of a medical opinion. 20 C.F.R. § 404.1527(d). In any event, Dr. Adams's opinion was given in November 2012, almost two years after McLain stopped meeting the insurance requirements at the end of 2010. Similarly, Dr. Camillo Gomez did not start treating McLain until after the end of the period when McLain qualified for

benefits.    In addition, neither Dr. Adams nor Dr. Gomez discussed in this documentation how McLain's ailments affected his ability to perform work.    This means that even if the records McLain cites constitute medical opinions, good cause existed to assign less than controlling weight to them, and the ALJ's failure to discuss the records would not have had a significant impact on his decision. Lewis, 125 F.3d at 1440; Diorio, 721 F.2d at 728.

Finally, we reject McClain's claim that the district court erred by failing to consider new evidence -- namely, three documents attached to his brief in the district court.    A claimant is generally permitted to present new evidence at each stage of the administrative process.    Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).    Where a claimant seeks judicial review of the Commissioner's final decision, there are two methods under 42 U.S.C. § 405(g) for a district court to remand a case to the Commissioner: "sentence four" remands and "sentence six" remands.    Id.    Under the sixth sentence of § 405(g), a district court may remand a case "to the Commissioner for the taking of additional evidence upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."    Id. (quotation omitted).    A "sentence six" remand "provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court."    Id. at 1267.    A claimant who

10

offers no explanation about why evidence that could have been obtained earlier was not submitted at the administrative level does not show good cause. Falge v. Apfel, 150 F.3d 1320, 1323-24 & n.8 (11th Cir. 1998).

Here, the district court did not err by failing to consider new evidence. Under the relevant law, the district court and this Court only review the SSA's final decisions, and the sole way for new evidence to be considered is through a "sentence six" remand, which allows the SSA to consider the evidence first. See 42 U.S.C. § 405(g); Ingram, 496 F.3d at 1261; see also Dyer, 395 F.3d at 1210. But McLain did not seek a sentence six remand in the district court or this Court, so he has waived the argument. See Access Now, 385 F.3d at 1331. And even if he has not waived it, McLain has not met his burden to show that a sentence six remand was warranted. In particular, McLain has not provided any good cause for why he submitted Dr. Gomez's opinions -- dated 2012, before the ALJ issued his decision -- to the district court but not during the administrative proceedings. See Ingram, 496 F.3d at 1261; Falge, 150 F.3d at 1323-24, 1323 n.8. As for the medical opinion of Dr. Michael Gibson, he started treating McLain around 2013, well after McLain stopped meeting the insurance requirements at the end of 2010. While Dr. Gibson opines that McLain's current neuralgia resulted from his 2009 shingles outbreak, he does not address meaningfully whether McLain's current symptoms were comparably severe during the relevant timeframe. Thus, it is not

11

probable that the new evidence would have materially affected the ALJ's decision that McLain was not disabled from February 2009 to December 2010.

**AFFIRMED**.