[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-11615

Non-Argument Calendar

————————————————

PHILIP THEIL,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:22-cv-00673-RDP

————————————————

Before JORDAN, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Philip Theil appeals the district court's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Theil argues that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") finding failed to properly address and explain Dr. Williams's medical opinion about Theil's supervisor and feedback-based limitations.

We review the ALJ's decision as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review Social Security cases to determine whether the Commissioner's decision was supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's factual findings must be supported by substantial evidence, meaning "more than a scintilla" and "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). However, we review *de novo* the legal principles applied by the Commissioner. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024).

An individual claiming Social Security disability benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v), (b)-(g).[1] First, if a claimant is engaged in substantial gainful activity, they are not disabled. *Id*. § 404.1520(a)(4)(i), (b). Second, if the claimant has no impairment or combination of impairments that significantly limits their ability to work, they are not disabled. *Id*. § 404.1520(a)(4)(ii), (c). Third, if the claimant's impairment meets or equals the severity of one of the Social Security regulations' listed impairments, they are considered categorically disabled. *Id*. § 404.1520(a)(4)(iii), (d). Fourth, based on an RFC assessment, if a claimant can still do their past work, they are not disabled. *Id*. § 404.1520(a)(4)(iv), (e)-(f). Fifth, in light of their RFC, age, education level, and work experience, if a claimant cannot do their past work but can make an adjustment to other work, they are not disabled. *Id*. § 404.1520(a)(4)(v), (g).

At step four, the ALJ must ascertain the claimant's RFC, which is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir.

---

[1] Separate regulations govern eligibility for DIB and SSI. *Compare* 20 C.F.R. pt. 404 (DIB), *with* 20 C.F.R. pt. 416 (SSI). However, "[t]he regulations for both programs are essentially the same." *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing same five-step sequential evaluation process).

2019); 20 C.F.R. § 404.1545(a)(1). The RFC is determined by the ALJ's consideration of the claimant's physical, mental, and other abilities affected by their impairment(s). *Schink*, 935 F.3d at 1268; *see* 20 C.F.R. § 404.1545(b)-(d). In formulating the RFC, the ALJ must account for all relevant medical evidence and other evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021); 20 C.F.R. § 404.1545(a)(1). The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter*, 5 F.4th at 1320-21 (quotation marks omitted).

For claims filed on or after March 27, 2017, a medical opinion "is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in the following abilities . . . ." 20 C.F.R. § 404.1513(a)(2). Such abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting"; the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and the "ability to adapt to environmental conditions, such as temperature extremes or fumes." *Id*. § 404.1513(a)(2).

For claims filed on or after March 27, 2017, an ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s)." *Id.* § 404.1520c(a). Instead, an ALJ must consider any submitted medical opinion or prior administrative medical finding using five enumerated factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(a), (c). Because the "most important" factors for evaluating the persuasiveness of a medical opinion are supportability and consistency, the ALJ must explain how it considered those two factors. *Id.* § 404.1520c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). "Consistency," in turn, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ "will articulate how [sh]e considered the medical opinions and prior administrative medical findings in [the claimant's] claim according to paragraph (b)." *Id.* § 404.1520c(a).

The ALJ has a duty to develop a full and fair record. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (quotation marks omitted). The ALJ must consider the evidence as a whole when determining

whether a claimant is disabled. *Id.* Further, "[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter*, 5 F.4th at 1326. In determining whether it is necessary to remand a case for development of the record, we consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995) (quotation marks omitted). Accordingly, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id.*

Here, the ALJ applied the correct legal standards and substantial evidence supports her decision. *See Winschel*, 631 F.3d at 1178. Specifically, the ALJ properly considered Dr. Williams's opinion about supervisor and feedback-based limitations, along with other records and medical opinions, in determining that Theil had the RFC to perform light work with certain exceptions, and substantial evidence supports the RFC. First, while the ALJ did not expressly analyze whether Dr. Williams's evaluation was a medical opinion, she treated his assessment as a medical opinion at step four of the sequential evaluation process. Dr. Williams's evaluation constituted a medical opinion as defined in the regulations because he tailored the evaluation to Theil's mental disorders by addressing his impairment-related limitations and what he could do at work based on his diagnoses. 20 C.F.R. § 404.1513(a)(2)(ii).

Second, as the ALJ was required to do because Dr. Williams's evaluation is a medical opinion, the ALJ explained how she considered the supportability and consistency of the opinion. 20 C.F.R. § 404.1520c(a). When assessing Theil's RFC, the ALJ cited to Dr. Williams's opinion, summarized his evaluation results, and stated that his opinion was "generally persuasive with the exception of portions that provide[d] vague, non-vocationally relevant terms." 20 C.F.R. § 404.1520c(c)(1). The ALJ explained with particularity that terms like "light" work pressures and "rapid" changes were vague, non-vocationally relevant terms because Dr. Williams did not clarify or provide examples of these limitations in an everyday work setting. As to consistency, the ALJ expressly found that Dr. Williams's opinion was "mostly consistent" with the contemporaneous psychiatric notes and adopted his opinion to that extent. 20 C.F.R. § 404.1520c(c)(2). The ALJ also included that the treatment notes generally showed mild to moderate symptoms and limitations, further explaining the opinion's consistency with the record. 20 C.F.R. § 404.1520c(c)(2).

Third, substantial evidence supports the ALJ's evaluation of the persuasiveness of Dr. Williams's opinion and, contrary to Theil's arguments on appeal, the ALJ did incorporate limitations in the RFC consistent with finding Dr. Williams's opinion generally persuasive. Theil argues that Dr. Williams's statement that "feedback should be supportive" is not vague or non-vocationally relevant, and thus, the ALJ erred by not including "feedback should be supportive" or related limitations in the RFC. He also argues that the ALJ failed to include limitations in supervisor interaction in her

written decision.  Dr. Williams—in an opinion that the ALJ expressly considered as "generally persuasive"—opined that Theil was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors.  Dr. Williams's narrative response, stating that "feedback should be supportive," derived from an explanation of Theil's social interaction capacities and/or limitations, where the entire section of the assessment discussed Theil's social interaction limitations with the general public, supervisors, and coworkers.  Dr. Williams's opinions, coupled with the content from the ALJ's decision demonstrating that Theil had mild to moderate limitations in interacting with supervisors, supports the conclusion that, after considering the record as a whole, Theil could perform light work with occasional contact with coworkers and the general public, and that he can adapt to infrequent, well-explained changes in the work environment.

The record demonstrates that the ALJ adequately considered Theil's ability to interact with supervisors by virtue of her consideration of Dr. Williams's report and the other evidence on the record.  For example, the ALJ cited to Theil's testimony where he stated that he was able to work as a pharmacy technician with a good record and had interpersonal relationships with his coworkers.  The ALJ noted that Theil was described as "pleasant, cooperative, and friendly" by Dr. Carr's office.  The ALJ also considered Dr. Nichols's assessment, where she found that Theil had mild limitations in interacting with the public and supervisors, and mild to moderate limitations in interacting appropriately with coworkers.  The ALJ's decision demonstrates that she considered Theil's

medical conditions as a whole in concluding that Theil should have occasional contact with coworkers and the general public, and was able to adapt to infrequent, well-explained changes in the work environment, which encompasses his interaction limitations in the workplace.

Lastly, the fully developed record does not show that Theil has been prejudiced from any alleged evidentiary gaps. *See Brown*, 44 F.3d at 935. Theil argues that the ALJ's omission of Dr. Williams's opinion on his supervisor and feedback-based limitations was prejudicial. Theil's argument fails because the ALJ ultimately determined that Theil had a moderate limitation in his ability to interact with others based on the record as a whole and did not have to cite to Dr. Williams's opinion that stated "feedback should be supportive" directly in her written decision. *Buckwalter*, 5 F.4th at 1326. The ALJ explicitly stated that she adopted most of Dr. Williams's opinion, which includes "feedback should be supportive." In making her determination, the ALJ adequately developed the record, because she considered all of the medical records produced and explicitly discussed Theil's ability to interact with others, along with Theil's testimony about his ability to interact with others. *Henry*, 802 F.3d at 1267. Further, Theil's argument—that the VE should have been asked about a hypothetical individual who presented more supervisor and feedback-based limitations, and thus, in its absence, the ALJ's decision was prejudicial—fails because the version of the hypothetical individual presented to the VE was supported by substantial evidence, as explained above. Based on the record as a whole, including Dr. Williams's evaluation that

"feedback should be supportive," the record does not reveal evidentiary gaps resulting in unfairness or clear prejudice. *Brown*, 44 F.3d at 935.

Theil's medical records contain evidence that a reasonable person would accept as adequate to support the ALJ's conclusion that he was capable of performing light work with no more than moderate limitations. *See Winschel*, 631 F.3d at 1178.

**AFFIRMED**.